# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**ELIZABETH H. COOK, FRANK BOWDEN,**
**and JAMES COOPER,**

      Plaintiffs,

v.                                  No. CIV 99-00322 BB/WWD

**JIM BACA, in his capacity as Mayor of the**
**City of Albquerque, and THE CITY OF**
**ALBUQUERQUE**

      Defendants.

## OPINION

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 28) and Defendant's Motion for Summary Judgment (Doc. 34), both filed January 21, 2000.  The Court has reviewed the motions, the memoranda submitted by the parties, and the relevant authorities.  The Court finds that Defendants' argument is well taken and rejects Plaintiffs' argument.  The Court, therefore, GRANTS Defendants' Motion for Summary Judgment, and DENIES Plaintiffs' Motion for Summary Judgment.

## I.  BACKGROUND

### A.  Facts and Procedural History

Each month the City of Albuquerque sends out a water bill to the city water users.  The water bill consists of five elements: (1) the bill's base charge; (2) the customer's monthly water consumption; (3) one or two water conservation tips; (4) a bar graph comparing the billed month

with the corresponding month in the previous year, the previous month, and the city's residential

average; and (5) "[a]n information bulletin from the Mayor's office."[1]  In the box reserved for the

mayor, each month the mayor provides a short message to all the city's water users.[2]

On the city water bill in March 1999, the message box from the mayor consisted of the

message:

> 75% of Albuquerque's streets are deteriorating.  Don't forget to
> mail in your ballot to the City Clerk by March 31, 1999 for the
> Quarter Cent Transportation Initiative.
>
> – Mayor Jim Baca

The Quarter Cent Transportation Initiative proposed a quarter cent sales tax that would enable

the city to raise more than 250 million dollars over ten years to fix roads, improve bus service, and

expand recreational trails.  City voters passed the Transportation Initiative.

Several days before the vote on the initiative, Plaintiffs filed suit against Defendants

alleging Defendants' actions violated their rights.  Specifically, Plaintiffs alleged that Defendants'

use of the water bill and the timing of its use denied: (1) Plaintiffs their right to a republican form

of government in violation of Article IV of the Constitution; (2) Plaintiffs access to a public forum

for expression of their viewpoints in violation of the First Amendment; (3) Plaintiffs equal access

to a public forum in violation of the Fourteenth Amendment; (4) Plaintiffs rights and privileges

secured by the Constitution in violation of 42 U.S.C. § 1983.

---

[1]This is the exact language as taken from the City of Albuquerque's Water Conservation Office web page
on "How to Read Your Water Bill."   See Doc. 29, exh B; Doc. 35, exh B.

[2]Examples of past statements include: "If you have lost a pet, please call the city's West Side Animal
Services Facility where we house most picked-up pets, and all our cats.  For more information, please call 768-
1975.  – Mayor Jim Baca;" and "I encourage you to check out GOV14 on cable channel 14 for news and
information on what's happening in your local government.   – Mayor Jim Baca."

In late July 1999, plaintiff James Cooper, on behalf of "Concerned Citizens," sent a letter to the city attorney requesting the placement of a message on behalf of Concerned Citizens in the September water bill. The letter, stated the group's understanding that the message box in the water bill was a public forum, and requested the message:

> Concerned Citizens urges you to vote against the City Charter
> Amendments that will appear on the October ballot. For
> Information call: 242-6223.

The city attorney responded to Mr. Cooper with a letter denying his request and explained that the City "does not allow political positions to be included in the water bill." Doc. 29, exh. M.

On October 1, 1999 both parties stipulated to an Order (Doc. 18) allowing Plaintiffs to file a Supplemental Complaint, and attached the supplemental complaint to the order. Plaintiffs' supplemental complaint set forth essentially the same factual allegations as in the original complaint, and then added new facts regarding Plaintiffs' letter to the city and the city's rejection of their request, as well as three additional claims against the city.[3] Mirroring claims in the original complaint, Plaintiff claimed: (1) the city denied Plaintiffs access to a public forum in violation of the First Amendment; (2) the city denied Plaintiffs equal access to a public forum in violation of the Fourteenth Amendment; and (3) the city's denial of access to the water bill violated Plaintiffs' rights under 42 U.S.C. § 1983.

On October 12, 1999 Plaintiffs re-filed their original complaint (Doc. 19), and then on October 29 re-filed their supplemental complaint under the heading "Amended Supplemental Complaint . . ." (Doc. 22). On January 21, 2000 both parties filed Motions for Summary

---

[3]The Supplemental Complaint only raised claims against the city and did not address the mayor.

Judgment.  Plaintiffs argue summary judgment is appropriate on Claims II-VII[4] because

Defendants: unconstitutionally denied access to a public forum, unconstitutionally used viewpoint

discrimination, unconstitutionally used prior restraint, and unconstitutionally expended taxpayer

resources.  Defendants, on the other hand, contend summary judgment is appropriate because

Plaintiffs have waived Claims II-IV, and since the message box is not a public forum and the

March 1999 water bill message from the mayor was not an unconstitutional use of resources, the

remaining claims should be dismissed.

## B.  Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R.

Civ. P. 56(c); *See*, Akin v. Ashland Chemical Co., 156 F.3d 1030, 1033 (10th Cir. 1998) (citing

Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)).  The movant bears the burden of establishing

the absence of a material question of fact.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157

(1970).  The movant may meet this burden by showing that there is an absence of evidence to

support the non-moving party's case.  Celotex Corp., 447 U.S. at 324.

Once the movant meets his burden, the burden then shifts to the non-movant to

demonstrate a genuine issue for trial on a material matter.  Bacchus Industries, Inc. v. Arvin

Industries, Inc., 939 F.2d 887, 890-891 (10th Cir. 1991).  The non-movant party may not rest on

---

[4]Plaintiffs appear to have waived Claim I, which alleged a violation of Article IV, Section 4 of the
Constitution.  They make no mention of the Article IV claim in their Motion for Summary Judgment and it is
similarly absent from the final Pre-Trial Order (Doc. 39).  A "definitive pre-trial order reflecting the agreement of
the parties, having been entered into after full discovery, must, of course, control the subsequent course of the
action.  F.R.Civ.P. 16(6)."  Trujillo v. Uniroyal Corp., 608 F.2d 815, 817 (10th Cir. 1979) (citing Case v. Abrams,
352 F.2d 193, 195 (10th Cir. 1965)).

its pleadings, but must set forth specific facts showing there is a genuine issue for trial as to those matters for which it carries the burden of proof.  <u>Celotex Corp.</u>, 447 U.S. at 324.

Thus, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986).  The facts must be construed in favor of the non-movant and the court must consider inferences that can be drawn from those facts tending to show triable issues.  <u>Applied Genetics Int'l., Inc. v. First Affiliated Securities, Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990).  The Court considers both motions in light of the above standards.

## II.  DISCUSSION

Essentially the dispute between the parties boils down to two issues: (1) whether the water bill's message box is a designated public forum; and (2) whether the city's decision to allow the mayor to submit a message advocating a position on a City Tax Initiative was an unconstitutional use of public funds.  Current law dictates both questions be answered in the negative.  Before addressing these issues, however, the Court must set the parameters of the claims under consideration.

### A.  Scope of the Claims

#### 1.  Supplemental vs. Amended

After Plaintiffs filed their original complaint in March 1999, the parties agreed that Plaintiffs would file a supplemental complaint.  Plaintiffs subsequently submitted the supplemental complaint in an attachment to a Stipulated Order from the Court allowing the addition (Doc. 18).  Plaintiffs then re-filed the supplemental complaint on October 29, 1999 under the self-titled

heading "Amended Supplemental Complaint." Defendants argue Plaintiffs waived claims II-IV

from the original complaint because Plaintiffs' "Amended Supplemental Complaint" was an

*amended* complaint rather than a *supplemental* complaint. Plaintiffs, on the other hand, argue

that even though they titled the second supplemental complaint "Amended Supplemental

Complaint," it was in fact a supplemental rather than an amended complaint.

If the complaint filed on October 29, 1999 was an amended complaint, as Defendants

contend, then it superseded the original complaint. <u>Wilson v. First Houston Investment Corp.</u>,

566 F.2d 1235, 1237-38 (5th Cir.1978) ("[a]s a general rule an amended complaint supersedes

and replaces the original complaint."). Accordingly, since the original complaint no longer

performs any function, all the claims Plaintiff alleged in the original complaint that Plaintiff did not

re-allege in the amended complaint would be waived. 6 Charles Alan Wright, Arthur R. Miller &

Mary Kay Kane, Federal Practice and Procedure §1476(R15) (2d ed. 1990); <u>King v. Atiyeh</u>, 814

F.2d 565, 567 (9th Cir. 1987).

Clearly the first supplemental complaint – the complaint attached to the Stipulated Order –

was a supplemental complaint. Doc. 18. Although it is not clear why Plaintiffs re-filed the

supplemental complaint and why they chose to re-file it under a new heading,[5] the only difference

between the supplemental complaint attached to the Stipulated Order (Doc. 18) and the

"Amended" supplemental complaint (Doc. 22) is the word "Amended" in the title. As there was

no other change to the complaint itself and no evidence to suggest Plaintiffs intended to amend

---

[5]The Court similarly has no explanation for why Plaintiffs re-filed the original complaint on October 12, 1999.

their supplemental complaint, the Court determines the "Amended" supplemental complaint is in fact and legal effect a supplemental complaint.[6]

## B. Water Bill's Message Box

Plaintiffs contend the water bill message box is a designated public forum and they argue Defendants committed constitutional violations by refusing to print Plaintiffs' proposed message in the water bill message box. Specifically, Plaintiffs contend Defendants: unconstitutionally denied them access to a public forum, unconstitutionally used prior restraint, and unconstitutionally used viewpoint discrimination. Defendants defend their decision not to place Plaintiffs' proposed message in the water bill by arguing the message box is not a public forum.

### 1. Constitutional Protection of Speech

In Cornelius v. NAACP Legal Defense & Educational Fund, Inc., 473 U.S. 788, 798 (1985), the Supreme Court delineated a three-step process for examining the constitutional protections afforded to private speech on government property. *See also* Summum v. Callaghan, 130 F.3d 906, 913 (10th Cir. 1997). Under this framework, the Court must determine first whether Plaintiffs' proposed message is protected speech. Cornelius, 473 U.S. at 798. In the second step, the Court must analyze the nature of the forum. Id. Finally, the Court must assess whether the city's justifications for excluding Plaintiffs' proposed message from the water bill message box satisfies the standard as determined in the second stage of the analysis. Id.

---

[6]Although the supplemental complaint adds significant new facts, new claims IV-VII are duplicative of original claims II-IV, except that the new claims are only raised against the city and not the mayor. The Court finds, therefore, that claims IV-VII are subsumed by claims II-IV.

a.  *Protected Speech*

The first step is easily met – Plaintiffs' proposed political message is protected speech.

National Endowment for the Arts v. Finley, 524 U.S. 569, 597, (1998) (political speech "is the

primary concern of the First Amendment"); *see also* Meyer v. Grant, 486 U.S. 414, 422 (1988).

b.  *Nature of the Forum*

The second step – the nature of the forum – is critical because it establishes the Court's

standard of review: "the extent to which the [city] may limit access to this property – i.e., whether

a heightened or reasonableness standard applies--depends on its categorization."  Summum, 130

F.3d. at 913.  In Perry Education Ass'n v. Perry Local Educators' Ass'n., 460 U.S. 37 (1983), the

Supreme Court delineated the three different types of fora: (1) the public forum; (2) the

designated public forum; and (3) the non-public forum.  460 U.S. at 45-46.

Public fora – such as streets and parks – are places whose "principal purpose [is] the

exchange of ideas" and which have "immemorially been held in trust for the use of the public and,

time out of mind, have been used for purposes of assembly, communicating thoughts between

citizens, and discussing public questions."  Int'l Society for Krishna Consciousness, Inc. v. Lee,

505 U.S. 672, 679 (1992) (citations and internal quotations omitted).  If the water bill message

box is a public forum then the government only may enforce: (1) content-based exclusions if it

shows that its regulations are necessary to serve a compelling state interest and that the

restrictions are narrowly drawn to achieve that end; and (2) time, place, and manner restrictions

which are content-neutral, narrowly tailored to serve a significant government interest, and leave

open ample alternative channels of communication.  460 U.S. at 45.

Designated public fora are a category of places which, although not traditionally open to the public, the government has designated as such – opening the property to the public as a place of communication "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." Cornelius, 473 U.S. at 803. Regulations in a designated public forum are examined under the same standard as in a public forum. Perry, 460 U.S. at 47.

Although the government may designate certain property as a public forum, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property . . . ," and not every instrumentality for communication "is a traditional public forum or a public forum by designation." Cornelius, 473 U.S. at 800, 804 (citations omitted). Some fora, then, are nonpublic. Non-public fora are examined under a different standard – the government may restrict speech in the forum so long as the regulation is "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Perry, 460 U.S. at 46.

Plaintiffs do not contend the water bill's message box is a public forum outright, so the only real forum question before the Court is whether the water bill's message box is a designated public forum or a non-public forum.[7] The Court finds no independent reason to consider the city

_____

[7]Plaintiffs', drawing on opinions from the Second Circuit, use the term "limited public forum" rather than 'designated public forum' in their Motion for Summary Judgment, but they use this term to denote a designated public forum. Doc. 29 at 7 ("[t]herefore, when Plaintiffs apply East Timor, . . . 'limited public forum' is synonymous with 'designated public forum' . . ."). The Court observes that there is considerable confusion regarding forum category terminology and the lower courts' interpretation of the Supreme Court's use of the term 'limited public forum.' Some courts adopt this term to refer to a sub-category of designated public forums, and thus subject it to the stricter scrutiny of review. See Travis v. Owego-Apalachin School Dist., 927 F.2d 688, 692 (2nd Cir. 1991) ("we have identified a sub-category of the designated forum that we have styled the 'limited public forum.'") Other courts use 'limited public forum' as a sub-category of non-public forum, and consider it under a
(continued...)

water bill's message box a designated public forum. In <u>Summum</u> the Tenth Circuit discussed the factors used to determine whether the government created a designated public forum: "(1) the purpose of the forum; (2) the extent of use of the forum; and (3) the government's intent in creating a designated public forum."[8]  130 F.3d at 915.  Plaintiffs have difficulties with each of these elements.

With respect to the purpose factor, the Court finds Plaintiffs' desired depiction of the water bill's message box, as forum open to any political message from anyone, to be incompatible with both the function and character of the city's water bill.  The city's water bill is essentially a tool to inform ratepayers of the amount they owe the city for water use and it is not a suitable forum for the dissemination of a free range of political opinions, on the various policy issues before the city.  The fact that the city permitted the mayor to include a monthly message in the

_____

[7](...continued)
reasonableness standard.  *See* <u>Summum</u>, at 130 F.3d at 915.  The Tenth Circuit has noted the difficulty with some of the forum distinctions drawn: "[w]e recognize that the boundary between a designated public forum for a limited purpose [subject to strict scrutiny] and a limited public forum [subject to reasonableness test] is far from clear. Because we conclude that Summum [who employed the term 'limited public forum'] is not alleging that a designated public forum has been created, we do not have to clarify the precise distinctions between the two.  We simply note that a designated public forum for a limited purpose and a limited public forum are not interchangeable terms."  <u>Summum</u>, 130 F.3d at 916.

In this case Plaintiff *is* alleging a designated public forum was created.  This does not complicate the discussion however, and the Court finds no reason to undertake the analysis to clarify the distinction between a designated public forum for a limited purpose and a limited public forum.  Even though Plaintiffs invoke the term 'limited public forum,' they are, by their own admission, only arguing that the message box is a designated public forum, not a designated public forum for a limited purpose.  Furthermore, as the Court concludes the water bill's message box is clearly a non-public forum, these potentially fine distinctions between various types of fora are irrelevant to this case.

[8]The <u>Summum</u> court explained the purpose element involves a consideration of "characteristic nature and function of the particular forum involved."  130 F.3d at 915 n.13 (citation and internal quotations omitted).  The extent of use requires that the government must allow "general access to or indiscriminate use of the forum in question whether by the general public, certain speakers, or for certain subjects."  <u>Id.</u> (citations and internal quotations omitted).  Lastly, in ascertaining whether the government *intentionally* opened a non-traditional forum the court should look to whether "the principal function of the property would be disrupted by expressive activity or [whether] government policy or practice reveals criteria to selectively limit access."  <u>Id.</u> (citation and internal quotations omitted).

water bill does not alter the primary function of the water bill: "[t]he fact that 'a government facility is specifically used for the communication of information and ideas' does not mean that it is 'ipso facto a public forum.'" Estiverne v. Louisiana State Bar Ass'n, 863 F.2d 371, 377 (5th Cir. 1989) (quoting Muir v. Alabama Educational Television Com'n, 688 F.2d 1033, 1041-42 (Former 5th Cir. 1982) (en banc)). Furthermore, unless otherwise intended, the city water bill is not an appropriate medium for the dissemination of a wide range of controversial political views. *See*, Loving v. Boren, 956 F.Supp. 953 (W.D. Okla.) *aff'd on other grounds* 133 F.3d 771 (10th Cir. 1998).

Second, and perhaps most damaging to Plaintiffs' allegation that Defendants created a designated public forum, there is no evidence to support the extent of use factor. The Supreme Court has found the extent of use requirement is not met when there is only selective access. Cornelius, 473 U.S. at 805; U. S. v. Kokinda, 497 U.S. 720, 730 (1990) (plurality opinion). Even if this Court characterized the city's permitted access to the water bill as selective, which it does not, the access would not meet the extent of use requirement. *See*, Lehman v. City of Shaker Heights, 418 U.S. 298 (1974) (city had always permitted commercial, but never political, advertising on buses). In this case, however, access to the message box is less than selective, it is essentially prohibitive – besides the mayor, the city permits access to *no one*. Both the city's policy and practice demonstrate the water bill's message box is reserved exclusively for the mayor.[9]

_____

[9]In terms of policy, the city's web page which delineates the components of the water bill explains that the message box contains "[a]n information bulletin from the Mayor's office;" and in Defendants' Answer to Plaintiffs' First Set of Interrogatories, Defendants explained "[t]he message appearing on the water bill is an information bulletin from the Mayor's office; the space has traditionally been reserved by the Public Works Department for the Mayor of Albuquerque." Doc. 35, Exh. A at 2. Additionally there is no evidence of past

(continued...)

In Plaintiffs' Response to Defendants' Motion for Summary Judgment (Doc. 36 at 2), Plaintiffs point out that some of the past message box statements have "unidentified authors" in an endeavor to suggest the city permitted other people to submit messages to the water bill's message box in the past.[10] The Court is not persuaded. Since the city's stated policy reserves the message box for a monthly communication from the mayor, and there is no indication that anyone outside the mayor's office has *ever* been given access to the message box, the fact that the messages before November 1997 do not have the mayor's name beneath them does not establish they came from someone other than the mayor. Furthermore, on the city's web page "How to Read Your Water Bill," where the city explains the different sections of the water bill, the sample water bill's message box contains a message with no mayor's name beneath it. Doc. 34, exh. B at 1. The Court finds no evidence the city ever allowed private individuals or groups access to the water bill's message box.

With respect to the final factor involved in this analysis – intent – not only are Plaintiffs unable to demonstrate Defendants ever intended to create a designated public forum, the city's consistent policy and practice which prohibit all messages from anyone other than the mayor clearly manifest Defendants' intent to avoid turning the water bill's message box into a designated public forum. *See*, Brown v. Palmer, 915 F.2d 1435 (10th Cir. 1990) (Military did not evidence intent to turn Air Force Base into a public forum by holding Armed Forces Day open house).

_____

[9](...continued)
practice which contradicts this policy.

[10]Plaintiffs refer to exhibit B of Defendants' Motion for Summary Judgment (Doc. 35). With one exception – when Mayor Martin Chavez left office – the message boxes before Mayor Jim Baca did not include the Mayor's name. For example, the following messages did not have the mayor's name beneath them: "Join the Albuquerque Clean Team and help keep Albuquerque Beautiful! Call 857-8280 for details;" and "Tell us your 'Good For You, Albuquerque' stories. Call the Mayor's office at 768-3000."

After analyzing each of the factors set forth by the Tenth Circuit in <u>Summum</u>, the Court must conclude Defendants did not create a designated public forum, and, therefore, the city water bill's message box is a non-public forum.

Nor does the Court find merit in Plaintiffs' other arguments for a designated public forum. Plaintiffs first contend the water bill's message box is a designated public forum because it is viewed by a large number of people. Plaintiffs argue "the nature of the forum is clear: the message window enters the homes of 475,000 City residents every month – greater circulation than any Albuquerque newspaper. Its nature is that of a public forum." Doc. 28 at 8. Even if these facts are true, they are almost entirely irrelevant. While the number of persons exposed to a forum may have some marginal relevance, it is the purpose of a forum that is significant. <u>Hawkins v. City and County of Denver</u>, 170 F.3d 1281, 1287 (10th Cir. 1999). As noted in this case, the purpose of the water bill's message box was to carry a message from the mayor.

Plaintiffs' next argument, which constitutes the bulk of their Motion, is their claim that the facts in this case are similar to the facts in <u>East Timor Action Network, Inc. v. City of New York</u>, 71 F. Supp.2d 334 (S.D.N.Y. 1999) and, since the court found a designated public forum in <u>East Timor</u>, this Court should find a designated public forum in the case at bar. Contrary to Plaintiffs' assertion, however, the facts in <u>East Timor</u> do not support Plaintiffs argument.

In <u>East Timor</u>, the court examined New York City's temporary street sign system. The city, under the Department of Transportation ("DOT"), permitted the temporary renaming of

streets for several specified reasons.[11]  71 F. Supp.2d at 338.  In the past, mayors of the city had

temporarily renamed street signs – for example Mayor Koch erected a sign, reading "Nelson and

Winnie Mandela Corner," on a corner near the South African Government's offices; and Mayor

Giuliani placed a sign near the Cuban mission naming the street "Esquino Hermanos Al

Rescate/Brothers to the Rescue Corner."[12]  Id. at 339-40.  While mayors sometimes erected

temporary signs, private citizens and organizations unrelated to the city were also allowed to

apply for temporary signs.  The city has authorized many signs over the years, such as: "Beauty

Way, and Beast Ave;" "Rabbi Meyer Blitzky Way;" "Rev. Calvin Rice Way;" "The Gay Way;"

"Yo Yo Ma Way;" "People Magazine Way;" and "Barbie Street."  Id. at 338-39.

     The plaintiff, a non-profit organization, brought suit against the city of New York because

the DOT refused to grant an application to temporarily erect the following street signs near the

Indonesian Consulate: "1991 Santa Cruz Massacre," and "Free East Timor."  Id. at 336-37.  The

DOT explained that it had to deny the request because of the "sensitive political nature" of the

message.  Id. at 337.  The court examined the different types of forum and concluded:

> the fact that the purpose for creating the forum appears to have
> been precisely to permit expressive activities . . .and the relatively
> broad access afforded members of the public (anyone, so long as
> the proposed sign does not fall within one of the excluded

---

[11]Specifically, the DOT permitted the temporary renaming of a street if the name promoted or commemorated one or more of the following:
❗ a public event of a not-for-profit nature
❗ a cultural event
❗ an event or person of historic significance
❗ an individual who has made a significant contribution to New Yorkers
❗ a community or public service.
A street renaming to promote products, commercial entities, political parties and/or candidates is prohibited.
East Timor, 71 F. Supp.2d at 388-89.

[12]Brothers to the Rescue is a Miami-based Cuban exile group dedicated to the overthrow of Fidel Castro.
East Timor, 71 F. Supp.2d at 340.

categories), support a finding that the DOT's policy has created a limited public forum.

Id. at 344.  In other words, the court concluded the street sign policy was a designated public forum because the primary purpose of the policy was "precisely to permit a wide range of commemorative street signs to be erected as an expressive activity."  Id. at 347.

These facts differ so greatly with the facts in the case at bar that it is difficult to understand Plaintiffs' desired comparison.  Unlike New York City's street sign policy, the purpose of the city water bill's message box is not to permit a wide expanse of expressive activities – the purpose of the water bill's message box is to permit the mayor to provide the city with a monthly message.

In addition, unlike New York City's street sign policy, which in theory was open to anyone who met the guidelines for sign proposals and in practice approved many sign proposals from private individuals and private groups, the water bill's message box is not and has never been open to anyone other than the mayor of Albuquerque.  Both the city's policy and practice bear this out.[13]  Plaintiffs cannot provide any evidence the city has ever permitted any individual or group to place a message in the water bill's message box.  The court in East Timor had many reasons to support its conclusion that New York City's street sign policy was a designated public forum.  In this case, with entirely different facts, none of these reasons are present.

---

[13]In this respect, Plaintiffs' argument, which persistently urges the Court to consider the city's actual practice rather than its stated policy, supports Defendants' claim better than Defendants' own arguments.  As discussed above, there is no evidence the city has ever allowed a private individual or group to print a message in the water bill's message box.  Therefore, an examination of the city's practice strongly supports Defendants' contention that the water bill's message box is reserved exclusively for the mayor.

Plaintiffs' final argument that Defendants created a designated public forum is based on the idea that the mayor's 'political' message in March of 1999 opened the water bill's message box as a designated public forum for politically sensitive speech.[14]  Doc. 28 at 10.  Plaintiffs argue, citing to several cases, that once the government has opened a forum for expressive activity it must "respect the lawful boundaries it has itself set."  Rosenberger v. Rector and Visitors of Univ. of Virginia., 515 U.S. 819, 829 (1995).

Unfortunately for Plaintiffs, their argument fails to show the city created a designated public forum.  Plaintiffs' reasoning might help them establish the contours of the water bill's message box *if* it were a designated public forum, but it does not establish that the water bill's message box *is* a designated public forum.  In other words, if originally the city had opened up the water bill's message box as a designated public forum for certain types of speech (e.g. public information messages) and subsequently allowed the mayor to submit his political message, then, arguably, the city would have expanded the type of expressive activities allowed.

Here, however, the city never opened the water bill's message box to any segment of the public for any reason – it never created a designated public forum in the first place.  Since the city never designated the water bill's message box as a public forum, the political message from the mayor may have altered the overall scope of the message box, but this change, at most, affected the boundary of messages the *mayor* could submit.  There is no reason why the mayor's non-

---

[14]Again, the message stated:

> 75% of Albuquerque's streets are deteriorating.  Don't forget to mail in your ballot to the City Clerk by March 31, 1999 for the Quarter Cent Transportation Initiative.

Defendants spend a disproportionate amount of time in their memoranda arguing that the mayor's statement was neutral and did not advocate a position.  The Court rejects this argument.  The message's factual assertion coupled with the use of "for," rather than "on," sufficiently demonstrate the mayor's advocacy of his position.

neutral March 1999 message would open access, of an otherwise non-public forum, to private individuals or groups.

For all of these reasons the Court finds the city water bill's message box is a non-public forum, not a designated public forum.

c. *Application of Standard*

The city may limit access to a nonpublic forum based on speaker identity so long as the restriction is "reasonable," with reasonableness "assessed in the light of the purpose of the forum and all the surrounding circumstances." <u>Cornelius</u>, 473 U.S. at 806, 809. In this case, the primary purpose of the water bill is to inform rate payers of the amount of money they owe for water use, and the purpose of the message box is to allow the mayor of Albuquerque to transmit a monthly message. Since the water bill is sent by the city to city water users, the Court finds nothing unreasonable about the city's decision to permit the mayor of Albuquerque – the chief executive of the city – to transmit a monthly message. Additionally, given these features of the water bill, the Court finds nothing unreasonable about the city's message box policy that limits access to city water bill's message box to the mayor alone. In fact, the restrictive access of the message box is entirely consistent with the purpose of the message box.

Plaintiffs' alternative to the city policy – which would allow any private citizen or private group to submit a message regarding any subject – would create a significantly more contentious water bill message box and would likely generate considerable controversy. As the Supreme Court has noted, "[a]lthough the avoidance of controversy is not a valid ground for restricting speech in a public forum, a nonpublic forum by definition is not dedicated to general debate or the free exchange of ideas. The First Amendment does not forbid a viewpoint-neutral exclusion of

speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose." Cornelius, 473 U.S. at 811.

Finally, the Court notes that just as in the Perry and Cornelius cases, in this case Plaintiffs had access to numerous alternative channels of communication to distribute their opinions regarding political issues. Plaintiffs' inability to print their political position in the city water bill's message box did not hinder their ability to convey their position in many other ways. *See also*, Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 815 (1984).

For these reasons, the Court finds Defendants' decision to restrict access to the water bill's message box to a monthly message from the mayor alone was reasonable.

## 2. Viewpoint Discrimination

In addition to their denial of access to a designated public forum claim, Plaintiffs also allege Defendants unconstitutionally discriminated against them on the basis of viewpoint. The fact that the Court determined the water bill's message box is a non-public forum rather than a designated public forum does not eliminate Plaintiffs' viewpoint claim, because even though the government may properly limit access to a non-public forum, it "violates the First Amendment when it denies access to . . . [a nonpublic forum] to a speaker solely to suppress his views on an otherwise includible subject." Cornelius, 473 U.S. at 806.

In this case, Plaintiffs allege Defendants rejected their request to print a message in the water bill's message box because of the city's viewpoint discrimination. Plaintiffs base their argument on the city's reply to their letter, which stated: "[w]e must decline your request. The City of Albuquerque does not allow political position statements to be included in the water bill."

Doc. 28, exh. M. According to Plaintiffs, since the city did permit a political position statement in the March 1999 water bill, Defendants' explanation is faulty and evidences the city's viewpoint discrimination.[15] Drawing their argument primarily on the "factually similar" East Timor (Doc. 28 at 7), Plaintiffs point out that in East Timor the court determined that the Department of Transportation had engaged in impermissible viewpoint discrimination because "[c]ertain politically sensitive signs were permitted, and certain politically sensitive signs were not permitted." 71 F. Supp.2d at 347.

Plaintiffs accurately argue the city cannot deny access to the water bill's message box on the basis of Plaintiffs' viewpoint. Unfortunately for Plaintiffs however, this is not what occurred. Despite the poor explanation of the city's rejection of Plaintiffs' request from the city attorney's office, the insurmountable problem with Plaintiffs' argument is that it ignores the scope of the forum at issue. The city water bill's message box is a forum limited to the *mayor alone*. Thus, regardless of the viewpoint expressed in Plaintiffs' requested message, the message was not within the scope of possible messages for the message box because it was not from the mayor. The city only could have discriminated on the basis of viewpoint if the denied message was otherwise includible in the forum's limitations, and here, because the message came from a private group and not the mayor, the message was not otherwise includible.

Again Plaintiffs' comparison with the "factually similar" East Timor fails precisely because of the factual differences with that case. In East Timor the court specifically concluded that the plaintiff's proposed signs were not "inconsistent with the intended use of the forum." 71 F.

---

[15]The Court notes the city's refusal to print Plaintiffs' message is Plaintiffs' only basis for arguing viewpoint discrimination. Plaintiffs present no evidence Defendants' position on the City Charter Amendments – the subject of Plaintiffs' desired message – actually differed from their own position.

Supp.2d at 347 (citation omitted). Unlike in <u>East Timor</u>, in this case Plaintiffs' requested message was inconsistent with the intended use of the forum because the requested message came from someone other than the mayor of Albuquerque. Admittedly, Defendants' failure to fully articulate the nature of the forum in the explanation of their rejection of Plaintiffs' request created unnecessary confusion over the scope of possible messages for the water bill's message box. Nonetheless, Defendants' overbroad explanation of the reason for their rejection did not transform the nature of the water bill's message box into a forum that permits access to anyone so long as their requested message does not contain a "political position." At most, Defendants' letter demonstrates a poor explanation of an otherwise legitimate policy which, because of its prohibitive limitations, necessarily barred Plaintiffs' request.

Therefore, the Court finds Defendants' rejection of Plaintiffs' requested message did not constitute unconstitutional viewpoint discrimination.

### d. Prior Restraint

In Plaintiffs' last forum-related claim they allege Defendants' denial of access to the water bill's message box was an unconstitutional prior restraint. There are at least two difficulties with the prior restraint argument. First of all, it seems unlikely that the water bill's message box policy should even be considered under a prior restraint model. Although Plaintiffs sought and were denied access to the water bill's message box, there is no way they could have gained access to the message box because of the limitations restricting access to the mayor. The Court sees no reason to examine the denial under a system of prior restraint on speech because there is no discretion or judgment involved in examining requests for access to the water bill's message box.

The consideration is simple – if the request comes from someone other than the mayor it will be denied.

The second difficulty is, unlike the analysis of viewpoint discrimination above, the analysis of prior restraints is directly impacted by the Court's determination of the nature of the forum in the case at hand. While prior restraints on speech are generally analyzed with strict scrutiny, prior restraints on speech in nonpublic forums are examined under a reasonableness test because the "context in which the restriction occurs affect[s] the level of scrutiny applied."   Milwaukee Police Ass'n v. Jones, 192 F.3d 742, 749 (7th Cir. 1999).  *See* Hazelwood School Dist. v. Kuhlmeir, 484 U.S. 260, 273 (1988) (prior restraint of speech in nonpublic forum is constitutional if reasonable).  In this case, even if Defendants' restriction on access to the water bill's message box is considered a prior restraint, this prior restraint is reasonably related to the city's purpose in maintaining the water bill's message box as a nonpublic forum reserved exclusively for the mayor.

The Court, therefore, finds Defendants did not apply an unconstitutional prior restraint on speech when it rejected Plaintiffs' message.

### C.  Unconstitutional Use of Public Funds

In their final claim, Plaintiffs allege Defendants' actions violated the First Amendment. Specifically, Plaintiffs argue Defendants unconstitutionally engaged in partisan promotion of the quarter-cent tax initiative because: (1) they placed the message from the mayor in the water bill's message box; (2) the mayor issued a message in a city newsletter which informed readers of his proposal and the reasons he deemed it important; and (3) the mayor organized a neighborhood

meeting to discuss the tax initiative.[16]  Plaintiffs base their argument on a number of state cases

that find "[a]t some threshold level, a public entity must refrain from spending public funds to

promote a partisan position during an election campaign."  Carter, 121 N.M. at 583.  Mindful that

unconstitutional practices may get their "first footing" in the "mildest and least repulsive form,"[17]

the Court nevertheless finds no merit in Plaintiffs' allegation and rejects Plaintiffs' argument.

The most formidable hurdle to Plaintiffs' argument is a legal one.  In all of the cases on

which Plaintiffs rely, as well as other cases in which courts have struck down the government's

use of public funds to support an election issue, the courts based their holdings on the violation of

some state regulation – no court has grounded its decision on the First Amendment.[18]  Here, in

---

[16]Plaintiffs themselves recognize that although partisan promotion of an issue is impermissible, education on a ballot issue is legitimate.  Doc. 29 at 15.  Furthermore, the cases which Plaintiffs cite indicate it is acceptable for a government official to express his personal opinion on an issue.  *See, e.g.*, Carter v. The City of Las Cruces, 915 P.2d 336, 339 (N.M. Ct. App. 1996).  Plaintiffs, however, offer no evidence to indicate the message in the newsletter or the neighborhood meeting were anything more than an effort to educate the public about the mayor's initiative and an expression of the mayor's personal viewpoint.  As a threshold matter, the Court finds no reason to consider either of these actions and, therefore, only considers the mayor's message in the city water bill in its analysis of the unconstitutional use of public funds claim. However, even if these other actions were considered they would not affect the Court's conclusion.  *Cf.* Federal Election Comm'n v. Christian Action Network, 894 F. Supp. 946 (W.D. Va.) *aff'd* 92 F.3d 1178 (4th Cir. 1995) (nonprofit corporation's advertisements informing public on "gay agenda" of presidential candidates not governed by Election Commission as they did not contain explicit words or imagery advocating electoral action).

[17]Boyd v. U. S., 116 U.S. 616, 634 (1886).

[18]The state courts' holdings rely exclusively on state law grounds and if they mention federal constitutional implications at all, they do so in dicta.  In Carter, for example, the court noted "On this appeal, *we need not and do not decide* whether Plaintiff states a valid claim for violation of constitutional rights. . . . However, because we are remanding this case for further proceedings, we do observe that Plaintiff's claims under the United States Constitution are not without support."  915 P.2d at 338 (emphasis added).  In terms of the state law foundation for the holdings: *see*, Stanson v. Mott, 551 P.2d 1 (Cal. 1976) (court declined to allow the Park Dept. to support a park bond issue, because the state statute which authorized the department to disseminate information about the agency's activities did not expressly authorize the department to spend funds on campaigns); Anderson v. City of Boston, 380 N.E.2d 628 (Mass. 1978) (the court found the city of Boston had no authority, under state statute regulating election financing, to support an amendment to state constitution and enjoined the city from expending funds), *stayed by*, City of Boston v. Anderson, 439 U.S. 1389, (Brennan, J., as Circuit Justice), *aff'd mem.*, 439 U.S. 951 (motion to vacate stay order denied);  Citizens to Protect Public Funds v. Board of Educ. of Parsippany-Troy Hills Tp., 98 A.2d 673 (N.J. 1953) (court rejected board of education's use of public funds to promote a school bond issue finding  "no express statutory provision authorizing the expenditure by

(continued...)

significant contrast to these cases, Plaintiffs' claim suggests no violations of state law; instead,

Plaintiffs' claim is founded exclusively on the First Amendment. Simply, then, the Court finds no

authority to conclude the First Amendment bars the mayor from placing a non-neutral message

regarding a tax initiative for the city's welfare, which he had himself proposed, in the space

reserved to him in the city water bill's message box.[19] In fact, one of the few federal cases to have

examined a government speech claim solely with respect to its First Amendment implications,

[18](...continued)
boards of education of public funds in the manner done by the defendant board"); Burt v. Blumenauer, 699 P.2d
168 (Or. 1985) (en banc) (court determined Health Dept.'s use of taxpayer funds to promote a health issue was
beyond the authorization of the state statutory scheme).

   In two other commonly cited federal court government speech cases, which Plaintiffs did not rely on, the
courts again based their holdings on state statutes. See, Campbell v. Joint Dist. 28-J, 704 F.2d 501 (10th Cir.
1983) (court found no need to reach the constitutional questions, because it found school board's support of an
amendment to state constitution was not authorized by Colorado's campaign statutes); see also, Mountain States
Legal Foundation v. Denver School Dist. No. 1, 459 F. Supp 357 (D. Colo. 1978) (court found no state statutory
authorization for school board's expenditure of funds to defeat a proposed state constitutional amendment). In
dicta in Mountain States, the court mentioned Article IV, Section 4 (republican form of government) concerns with
defendant's actions. 459 F. Supp at 360-61. Besides the fact the court's discussion of Article IV Section 4 concern
is dicta, and since Plaintiffs do not raise an Article IV Section 4 claim, Mountain States is further inapplicable for
comparison because the court's primary concern was with the school board expenditure of public funds to *oppose a
citizen proposed* state constitutional amendment: "[w]hen residents within a state seek to participate in this process
by proposing an amendment to the state constitution, the expenditure of public funds in opposition to that effort
violates a basic precept of this nation's democratic process." Id. Here, in contrast, any expenditure of public funds
by Defendants was to *promote* a tax initiative which was *proposed by the mayor himself*.

   [19]To the extent Plaintiffs are claiming the mayor used governmental resources to foster his political
position, there is some question as to the applicability of the First Amendment. In Common Cause v. Bolger, 574,
F. Supp 672, 681 (D.D.C.) aff'd without opinion 461 U.S. 911 (1982), political candidates challenged the
incumbent's use of the franking privilege on the ground that it was a government subsidy which permitted
incumbents an unfair advantage. The three judge panel considered the applicability of the First Amendment and
concluded:

   [i]n fact, beyond acknowledging that the franking statute has some limited
   impact upon speech-related rights, the First Amendment ensures that one's
   own speech be free, unfettered, and unabridged, it does not alone require that
   each individual be entitled to this particular privilege of incumbency that
   certain others may enjoy. For this reason, questions of the constitutionality of
   governmental-created imbalances are much better suited to analysis under the
   principle of equal protection than under freedom of speech.

574 F.Supp at 681. (footnote omitted).

rejected the plaintiff's claims. <u>Alabama Libertarian Party v. City of Birmingham, Ala.</u>, 694 F. Supp. 814 (N.D. Ala. 1988).[20]

In <u>Alabama Libertarian</u>, the court considered a group of taxpayers' allegation that the city of Birmingham's promotion of a series of city initiatives (property taxes, telephone charges, and bond issue) violated their First Amendment rights. The court carefully considered the claim and concluded that the city's use of public funds to support the initiatives was not unconstitutional. The court found:

> [t]his was not a case where municipal funds were used to support a particular candidate, doctrine or ideology. Rather, the City merely solicited its citizens to provide funds to supply perceived needs common to all. The City and its officials not only have the right, but the duty, to determine the needs of its citizens and to provide funds to service those needs. The funds must come from some source. . . . While defendants might be forbidden to spend funds to support candidates, oppose initiative proposals, etc., they are not forbidden to publicize and seek public support for their own governmental proposals.

694 F. Supp. at 817-18. As in <u>Alabama Libertarian</u>, this Court is not called upon to decide the constitutionality of a municipality's expenditure of funds to support a candidate in an election or to oppose a citizen-driven initiative. In this case, where the mayor provided minimal advocacy of a tax initiative he created, the Court finds no First Amendment violation.

Finally, the Court notes the Supreme Court's language in its recent decision <u>Board of Regents of the Univ. of Wisconsin System v. Southworth</u>, --- U.S. ----, 120 S.Ct. 1346 (2000).

---

[20]One commentator distinguished the results in <u>Alabama Libertarian</u> from the results in the other government speech cases precisely because "[o]ther courts found a statutory basis for their decisions, using constitutional principles only for support," while "[<u>Alabama Libertarian</u>'s] holding was founded solely on the federal Constitution." Leigh Contreras, Note, <u>Contemplating the Dilemma of Government As Speaker: Judicially Identified Limits on Government Speech in the Context of Carter v. City of Las Cruces</u>, 27 N.M. L. Rev. 517, 528 (1997).

Although the Supreme Court did not specifically address the government's right to use its own funds to advance a particular governmental program or government introduced initiative, the Court noted:

> [i]t is inevitable that government will adopt and pursue programs and policies within its constitutional powers but which nevertheless are contrary to the profound beliefs and sincere convictions of some of its citizens. The government, as a general rule, may support valid programs and policies by taxes or other exactions binding on protesting parties. Within this broader principle it seems inevitable that funds raised by the government will be spent for speech and other expression to advocate and defend its own policies.

Id., *6. While admittedly dicta, the Supreme Court's understanding of the issue strengthens this Court's conclusion that Defendants' publication of the water bill's message box with a message advocating a pro-position on a tax initiative to advance city programs, which the mayor himself had proposed, did not constitute an unconstitutional use of public funds.

Unlike the cases mentioned above which contained specific factual events that could conceivably raise constitutional concerns not present here, the Court finds no ominous threat to the First Amendment in Defendants' minimal action. For the reasons discussed, the Court concludes Defendants did not violate Plaintiffs' First Amendment rights.

## III. CONCLUSION

After considering all the arguments and legal authority, the Court concludes Plaintiffs claims fail. For the reasons stated above, the Court finds Defendants did not create a designated public forum, and, in their rejection of Plaintiffs' proposed message, Defendants did not unconstitutionally discriminate on the basis of viewpoint or apply an unconstitutional prior

restraint on speech.  Furthermore, the Court finds Defendants actions did not constitute an

unconstitutional use of public funds in violation of Plaintiffs' First Amendment rights.  For these

reasons, summary judgment for Defendants is appropriate.  A final order will follow this opinion.


Dated at Albuquerque this 25th day of April, 2000.


BRUCE D. BLACK
United States District Judge


**Attorneys:**

**For Plaintiff**
David A. Standridge, Jr.
2501 San Pedro Dr. NE, Suite 102
Albuquerque, New Mexico 87110

**For Defendant**
Kathryn Levy
Mark Hirsch
Assistant City Attorneys
P.O. Box 2248
Albuquerque, New Mexico 87103